**BROOKS v. YARBROUGH et al.**

Circuit Court of Appeals, Tenth Circuit. January 13, 1930.

Rehearing Denied February 17, 1930.

No. 91.

A. P. Carr, of Pawhuska, Okl., for appellant.

Lee Williams, of Seminole, Okl., and F. O. Yarbrough, of Pawhuska, Okl. (H. C. Hargis, of Pawhuska, Okl., on the brief), for appellees.

Before LEWIS, COTTERAL, and PHILLIPS, Circuit Judges.

PHILLIPS, Circuit Judge. George A. Brooks, hereinafter called the plaintiff, brought this suit against F. O. Yarbrough, as administrator, with the will annexed, of the estate of Bridget Ann Barber, deceased, and Clara Forbes, hereinafter called the defendants, seeking specific performance of an alleged oral contract between Bridget Ann Barber and the plaintiff.

The complaint alleged that the plaintiff is a citizen of Missouri; that Yarbrough is a citizen of Oklahoma; that Clara Forbes is a citizen of Kansas; that the matter in controversy, exclusive of interest and costs, exceeds the sum and value of $3,000; that, on February 20, 1926, at Fredonia, Kansas, Bridget Ann Barber orally agreed she would feed and clothe plaintiff, buy him an automobile and a diamond ring, and, at her death, give him $5,000 in cash and her grape and lemond orchard land (specifically described in the complaint) in Sharyland Valley, near Mission, Texas, free and clear of encumbrances, if plaintiff would live with her as a son and devote his entire time and services to her and her business during the remainder of her life; that, in consideration of such promise of Bridget Ann Barber, plaintiff then and there promised and agreed to live with her as a son and to devote his entire time and services to her and her business during the remainder of her life; that, continuously thereafter until the date of the death of Bridget Ann Barber, plaintiff rendered her full filial obedience, was her constant companion and in all other ways conducted himself as a faithful son; that, in pursuance of such contract, Bridget Ann Barber gave to plaintiff a Buick automobile; that the purchase price thereof was approximately $2,200; that she made the initial payment on the purchase price and promised to pay the remainder, but failed to provide for the payments falling due after her death; that, as a result of such failure, the automobile was repossessed by the seller; that, in compliance with such contract, Bridget Ann Barber purchased and gave to plaintiff a diamond ring of the value of $1,000; that, while in the hospital, a few days before her death, Bridget Ann Barber requested that plaintiff return such ring to

her temporarily; that plaintiff complied with such request and such ring has never been returned to him; that plaintiff fully and completely complied with and fulfilled all the terms and obligations of such oral contract; that Bridget Ann Barber died June 5, 1926; that, after the making of prior wills by Bridget Ann Barber which complied with such oral contract, on June 1, 1926, Bridget Ann Barber made and executed an instrument as her will, which entirely omitted any provision for plaintiff in compliance with such oral contract; that such will was probated under order of the county court of Osage County, Oklahoma, as the last will and testament of Bridget Ann Barber; that such last mentioned will devised such land to Clara Forbes; that Yarbrough is the duly appointed, qualified and acting administrator, with the will annexed, of the estate of Bridget Ann Barber; that claims based upon the alleged breaches of such oral contract were presented and disallowed by such administrator within four months after publication of the first notice to the creditors of such estate; that this suit was filed within three months after the presentation of such claims. Copies of such claims are attached to the complaint as exhibits and by reference are incorporated in and made a part of such complaint.

The complaint asks for judgment against the administrator for the sum of $5,000, together with interest thereon from June 6, 1926, at 6% per annum; for the sum of $3,200, the value of such Buick automobile and such diamond ring, with interest from June 6, 1926, until paid; and for a decree ordering and adjudging Yarbrough, as administrator, and Clara Forbes, as devisee under such will, to convey to plaintiff such land.

Both defendants appeared and filed a demurrer to the complaint on the ground that it was without equity and failed to state facts sufficient to constitute a cause of action. The demurrer was treated as a motion to dismiss and was sustained by the trial court. Thereupon, the plaintiff elected to stand upon his complaint and not to plead further. Judgment was rendered dismissing the complaint. This is an appeal therefrom.

Counsel for the defendants contend that the claims for damages for the alleged breach of the contract constitute legal causes of action, and that the demand for specific performance of the contract, as to the land, is an equitable cause of action; that the claims for damages and the claims for specific performance constitute separate and distinct

causes of action; and that legal and equitable causes of action cannot be joined in a suit brought in an United States court.

The rule of procedure, for which counsel for the defendants contend, is well settled and their position must be sustained, if the claims for damages constitute separate and distinct legal causes of action, which may be recovered in a separate action.

■ Distinct and separate demands, arising out of a contract, give rise to separate causes of action upon which separate actions may be maintained. A severable contract may be severed and different actions brought thereon. Fellows v. National Can Co. (D. C. Mich.) 13 F.(2d) 210; 1 C. J. p. 1111, § 285; McIntosh v. Lown, 49 Barb. (N. Y.) 550.

■ If, at the time of the commencement of an action to recover upon a severable part of a claim, then capable of recovery in such action, another severable part of such claim is incapable of recovery in that particular action; such other separate and severable right of action (even though both arise out of the same contract) may be made the subject of a separate action without offending against the rule prohibiting the splitting of causes of action. Fellows v. National Can Co., supra; Reid-Murdoch & Co. v. Parks, 122 Mich. 363, 81 N. W. 252; Stringer v. Gamble, 155 Mich. 295, 118 N. W. 979, 30 L. R. A. (N. S.) 815.

■ In order to come within the rule against splitting causes of action, the omitted claim must be a part of the cause of action sued upon and recoverable in such action. Neher v. Armijo, 11 N. M. 67, 66 P. 517, 518; Huffman v. Knight, 36 Or. 581, 60 P. 207, 208.

■ The claims for damages on account of the alleged breach of the covenant with regard to the diamond ring and automobile, and the claim for specific performance with reference to the $5,000 and the land, while arising out of the same contract, are predicated upon separate and distinct breaches of separate and distinct covenants of that contract, which were to be performed at different times. The claims for damages must be redressed by a legal remedy, while the claims for specific performance must be redressed by an equitable remedy.

Counsel for the plaintiff contend that this case comes within the rule that, where the controversy requires purely equitable relief, such as will give a court of equity a right to act, the court will proceed to a final determination of all the matters in issue, although in doing so it may establish purely legal rights and give purely legal remedies which would otherwise be beyond its power. This is a well settled principle. United States v. U. P. R. R. Co., 160 U. S. 1, 50, 52, 16 S. Ct. 190, 40 L. Ed. 319; Lincoln Nat. L. I. Co. v. Peake (D. C.) 10 F.(2d) 366. But it applies only to legal claims that are dependent upon, or germane to the matter of equitable jurisdiction and does not apply to distinct legal rights which will not be affected by the adjudication of the equitable question involved. Poe v. Munich Re-Insurance Co., 126 Md. 520, 532, 95 A. 164, 168, 169; Shaw v. Beaumont Co., 88 N. J. Eq. 333, 102 A. 151, 152, 2 A. L. R. 122; Stout v. Phœnix Assurance Co., 65 N. J. Eq. 566, 56 A. 691, 694; Haggin v. Peck, 10 B. Mon. (Ky.) 210. In the instant case, the claims for damages with reference to the automobile and ring are distinct legal claims, neither dependent upon nor germane to the matter of equitable jurisdiction, and they cannot be recovered in this suit in equity.

It is our conclusion that plaintiff had an adequate remedy at law through a separate action for the alleged claims for damages with regard to the automobile and ring, and that the motion to dismiss was properly sustained as to such claims.

■ Counsel for the defendants further contend that, since Yarbrough was appointed administrator by the probate court of Osage County, Oklahoma, he has no title to, or control over lands situated in the state of Texas.

Letters testamentary or of administration have no extra-territorial force and confer no authority upon the representative of an estate to administer upon property outside of the state of his appointment. Overby v. Gordon, 177 U. S. 214, 20 S. Ct. 603, 44 L. Ed. 741; Lawrence v. Nelson, 143 U. S. 215, 222, 12 S. Ct. 440, 36 L. Ed. 130; Aspden v. Nixon, 4 How. 467, 11 L. Ed. 1059; Vaughan v. Northup, 15 Pet. 1, 10 L. Ed. 639; Wilson v. Hartford Fire Ins. Co. (C. C. A. 8), 164 F. 817; 24 C. J. 1109, § 2671. It follows then that the bill stated no cause of action against Yarbrough, as administrator, with respect to the land.

■ Counsel for the defendants also contend that, in the instant case, jurisdiction is founded only upon the fact that the action is between citizens of different states and that, under the provisions of section 112 (a), Tit. 28 U. S. C. (28 USCA § 112(a), this suit could be brought only against Clara Forbes, either in the district of Missouri (the residence of plaintiff) or in the district of Kansas (the residence of Clara Forbes). Section 41 (1), Tit. 28 U. S. C. (28 USCA § 41

(1), provides that the district court shall have "original jurisdiction" of certain classes of civil suits, including suits "between citizens of different states," where the value of the subject matter in controversy, exclusive of interest and costs, exceeds $3,000. Section 112, supra, provides that "where the jurisdiction is founded only on the fact that the action is between citizens of different states,' suit shall be brought only in the district of the residence of either the plaintiff or the defendant." It is settled law that section 41 (1) invests each of the district courts with general jurisdiction of all civil suits between citizens of the different states, where the matter in controversy is of the requisite pecuniary value, and that section 112, supra, does not detract from that general jurisdiction but merely accords to the defendant a personal privilege respecting the venue, which he may assert or may waive, at his election, and that he waives it by entering a general appearance and pleading to the merits. Commercial Casualty I. Co. v. Consolidated Stone Co., 278 U. S. 177, 179, 49 S. Ct. 98, 73 L. Ed. 252; St. Louis & San Francisco R. Co. v. McBride, 141 U. S. 127, 131, 11 S. Ct. 982, 35 L. Ed. 659; Lee v. Chesapeake & O. R. Co., 260 U. S. 653, 655, 43 S. Ct. 230, 67 L. Ed. 443.

Counsel for the defendants further contend that the claims presented to the administrator, under the provisions of sections 1232, 1240 and 1242, C. O. S. 1921, were insufficient because of uncertainty and cannot form a basis for the present suit. With respect to the land, plaintiff seeks relief which is purely equitable, that is, the establishment of a trust and the specific performance of the contract. It is not necessary to present purely equitable claims to an administrator or to a probate court for allowance for the reason that neither the administrator nor the probate court can grant equitable relief. Oles v. Macky, 58 Colo. 295, 144 P. 891; Oles v. Wilson, 57 Colo. 246, 141 P. 489, 492; 24 C. J. p. 324.

However, a different situation exists with respect to the alleged promised bequest of $5,000. Such bequest was not to be of any specific money; the promise was not to bequeath a whole or a fractional part of any specific property; no lien was expressly created; no trust was imposed upon any specific property; there was nothing in the promised bequest which fastened it on any specific property; and such bequest cannot be specifically performed. It follows that plaintiff has an adequate remedy at law and is not entitled to relief in equity with respect to the alleged failure to bequeath the sum of $5,000. Welsh v. Hour, 100 N. J. Eq. 417, 136 A. 327.

Assuming, without deciding, that the claim with respect to the bequest of $5,000 arises out of the same transaction as the claim with respect to the land and is germane to the matter of equitable cognizance, and that equity, having taken jurisdiction to grant specific performance of the covenant respecting the land, will settle the entire controversy and grant relief with respect to the $5,000 claim, still the relief sought with respect to the latter claim would be purely legal. Therefore, it becomes necessary to pass upon the sufficiency of the claim filed with the administrator upon which the $5,000 demand is predicated.

While the statement of such a claim may be informal, it must be sufficiently clear to identify the claim and apprise the personal representative of its general nature, character, and amount, and to enable him to act intelligently in providing for its payment or in rejecting it. Carter v. Pierce, 114 Ill. App. 589, 592; Etchas v. Orena, 127 Cal. 588, 60 P. 45; 24 C. J. p. 348, § 986. While the claim filed in the instant case stated the amount due, in all other respects it wholly failed to meet the requirements above set forth. It did not set forth any of the provisions of the contract here alleged. We think it was fatally defective and that it cannot constitute the basis of plaintiff's claim with respect to the $5,000 demand.

One further principal proposition is presented: Will a suit for specific performance lie against Clara Forbes as the specific devisee of the 20 acres of land under the last will and testament of Bridget Ann Barber, deceased?

It is settled law that a person may make a valid agreement binding himself to dispose of his property in a particular way by a last will and testament. Durour v. Perrara, 2 Hag. State Trials, 304; Walpole v. Orford, 3 Ves. 402; Owens v. McNally, 113 Cal. 444, 45 P. 710, 33 L. R. A. 369; Johnson v. Hubbell, 10 N. J. Eq. 332, 66 Am. Dec. 773; Taylor v. Cathey, 211 Ala. 589, 100 So. 834, 837; Eggstaff v. Phelps, 99 Okl. 54, 226 P. 82; Kisor v. Litzenberg, 203 Iowa, 1183, 212 N. W. 343, 345; Pfeiffer v. Kemper, 244 Ill. App. 474; McCullough v. McCullough (Wash.) 280 P. 70; Burmeister v. Hamann (Iowa) 226 N. W. 10; O'Neil v. Ross (Cal. App.) 277 P. 123; Gordon v. Spellman, 145 Ga. 682, 89 S. E. 749, 750, Ann. Cas. 1918A,

852; Stewart v. Todd, 190 Iowa, 283, 173 N. W. 619, 621, 622, 180 N. W. 146, 20 A. L. R. 1272; Crinkley v. Rogers, 100 Neb. 647, 160 N. W. 974, 975; Torgerson v. Hauge, 34 N. D. 646, 159 N. W. 6, 3 A. L. R. 164; Popejoy v. Boynton, 112 Or. 646, 229 P. 370, 230 P. 1016; Lawton v. Thurston, 46 R. I. 317, 128 A. 199; Van Natta v. Heywood, 57 Utah, 376, 195 P. 192; Worden v. Worden, 96 Wash. 592, 165 P. 501; Bolman v. Overall, 80 Ala. 451, 2 So. 624, 626, 60 Am. Rep. 107.

■ A court of equity, in a proper case, will specifically enforce such an agreement by treating the heirs, devisees or personal representatives, as the case may be, as trustees and compel them to convey the property in accordance with the terms of such contract. Durour v. Perrara, supra; McCullough v. McCullough, supra; O'Neil v. Ross, supra; Gordon v. Spellman, supra; Stewart v. Todd, supra; Crinkley v. Rogers, supra; Torgerson v. Hauge, supra; Popejoy v. Boynton, supra; Lawton v. Thurston, supra; Worden v. Worden, supra; Salem v. Finney, 127 Misc. Rep. 387, 215 N. Y. S. 553; Whitney v. Hay, 181 U. S. 77, 21 S. Ct. 537, 45 L. Ed. 758.

In Johnson v. Hubbell, supra, the court said:

"There can be no doubt but that a person may make a valid agreement binding himself legally to make a particular disposition of his property by last will and testament. The law permits a man to dispose of his own property at his pleasure, and no good reason can be assigned why he may not make a legal agreement to dispose of his property to a particular individual, or for a particular purpose, as well by will as by a conveyance to be made at some specified future period or upon the happening of some future event. It may be unwise for a man, in this way, to embarrass himself as to the final disposition of his property, but he is the disposer, by law, of his own fortune, and the sole and best judge as to the time and manner of disposing it. A court of equity will decree the specific performance of such an agreement upon the recognized principles by which it is governed in the exercise of this branch of its jurisdiction."

In Bolman v. Overall, supra, the court said:

"The principle upon which courts of equity undertake to enforce the execution of such agreements is referable to its jurisdiction over the subject of specific performance. It is not claimed, of course, that any court has the power to compel a person to execute a last will and testament carrying out his agreement to bequeath a legacy; for this can be done only in the lifetime of the testator, and no breach of the agreement can be assured so long as he lives. And, after his death, he is no longer capable of doing the thing agreed by him to be done. But the theory on which the courts proceed is to construe such an agreement, unless void under the statute of frauds or for other reason, to bind the property of the testator or intestate so far as to fasten a *trust* on it in favor of the promisee, and to enforce such trust against the heirs and personal representatives of the deceased, or others holding under them charged with notice of the trust. It is in the nature of a covenant to stand seized to the use of the promisee, as if the promisor had agreed to retain a life-estate in the property, with remainder to the promisee in the event the promisor owns it at the time of his death, but with full power on the part of the promisor to make any *bona fide* disposition of it, during his life, to another, otherwise than by will. The power to make such a will having been renounced, the attempt to exercise it is deemed a fraud on the rights of the promisee under the contract, thus bringing into exercise another ground of equity jurisdiction. As said by Lord Camden in Dufour v. Perran (quoted by Hargrave in his Judicial Arguments, volume 2, p. 310): 'There is no difference between one's promising to making a will in such a form, and making such will with a promise not to revoke it. The courts do not set aside the will in such cases, but the executor, heir, or devisee is made a trustee to perform the contract.'"

■ To sustain an oral contract to make a will, the evidence must be clear, satisfactory and convincing, and must establish the contract beyond a reasonable doubt. McCullough v. McCullough, supra; Holter v. Laugen, 157 Minn. 90, 195 N. W. 639; Young v. Gillen, 108 Neb. 311, 187 N. W. 900; Kisor v. Litzenberg, supra; Walker v. Eller, 178 Ark. 183, 10 S.W.(2d) 14; Mathews v. Tobias, 126 Or. 358, 268 P. 988.

■ The rule with respect to defendants in such cases is stated in Pomeroy's Specific Performance of Contracts (3d Ed.) § 494, as follows:

"If the vendor dies before the completion, the suit must be brought against his heirs, or against his devisees, if the land in question has been devised, and where the heirs are sued all of them should be joined. If the suit is against a devisee of the land in question, it

does not seem to be necessary to join the heirs, unless the will is disputed. If the purchase money remains unpaid in whole or in part, the personal representatives of the vendor are also necessary co-defendants, and they are always proper parties."

The will having been probated and the specific devise of the land to Clara Forbes not being disputed, she is the only necessary party defendant, so far as the land is concerned.

Counsel for the defendants further contend that, since the land is situate in Texas, the Texas statute of frauds applies and that, under that statute, as construed by the Supreme Court of Texas in Hooks v. Bridgewater, 111 Tex. 122, 229 S. W. 1114, 15 A. L. R. 216, and by the Texas Court of Civil Appeals in Henderson v. Davis, 191 S. W. 358, the alleged performance of the contract upon the part of the plaintiff is not sufficient to take the case without the Texas statutes of frauds, and, therefore, this suit may not be maintained for specific performance of the contract to devise such land.

Title 62, art. 3965 of the 1920 Complete Texas Statutes reads as follows:

"Written memorandum required to maintain certain actions.—No action shall be brought in any of the courts in any of the following cases, unless the promise or agreement upon which such action shall be brought, or some memorandum thereof, shall be in writing and signed by the party to be charged therewith, or by some person by him thereunto lawfully authorized: * * *

"4. Upon any contract for the sale of real estate * * *"

The Texas statute of frauds, above quoted, is substantially the same as the fourth section of the English statute. It will be noted that this statute does not say that the promise shall be illegal, nor that the contract shall be void, but it says, "No action shall be brought in any of the courts" etc.

The fourth section of the English statute and the statutes employing substantially the same language as the fourth section of the English statute, generally, have been held to apply to procedure and remedy only, and not to go to the obligation or validity of the contract. Heaton v. Eldridge, 56 Ohio St. 87, 46 N. E. 638, 36 L. R. A. 817, 60 Am. St. Rep. 737; Boone v. Coe, 153 Ky. 233, 154 S. W. 900, 901, 51 L. R. A. (N. S.) 907; Le Roux v. Brown, 12 C. B. 801, 138 E. Reprint 1119; Buhl v. Stephens (C. C.) 84 F. 922, 925, 926; Barbour v. Campbell, 101 Kan. 616, 168 P. 879, 880; Downer v. Chese-brough, 36 Conn. 39, 4 Am. Rep. 29; Third Nat. Bk. of N. Y. v. Steel, 129 Mich. 434, 88 N. W. 1050, 1051, 1052, 64 L. R. A. 119; Pritchard v. Norton, 106 U. S. 124, 134, 1 S. Ct. 102, 27 L. Ed. 104; Ohlendiek v. Schuler (C. C. A. 6) 30 F.(2d) 5, 6; Daniels v. Rogers, 108 App. Div. 338, 96 N. Y. S. 642; Story's Conflict of Laws (7th Ed.) § 576; 27 C. J. p. 124, § 3.

It follows that the statute of frauds of Oklahoma (Comp. St. Okl. 1921, § 5034), rather than of Texas, governs this action brought in the United States District Court for the Northern District of Oklahoma.

Does the alleged performance, upon the part of the plaintiff, take the case without the statute of frauds? The rule, stated in Pomeroy's Specific Performance of Contracts (3d Ed.) § 114, is:

"When it is impossible to restore the plaintiff to his original position by any legal remedy, then the fundamental conditions of the equity jurisdiction in case of part performance are fulfilled, and a payment is sufficient to take the verbal contract out of the statute of frauds. These special circumstances can hardly arise when the plaintiff has simply paid the purchase-price of land in money either wholly or partially; they rather occur, if at all, when the consideration of the agreement consists in work, labor and services personally done and rendered by the plaintiff himself, or procured to be done and rendered and paid for by him. In such a case, if the value of the services can be ascertained with reasonable accuracy in an action at law, and adequately compensated by a recovery of damages, neither the services themselves nor the payment for them will avail as a part performance of the verbal agreement. But if the services are of such a peculiar character that it is impossible to estimate their value by any pecuniary standard, and it is evident that the parties did not intend to measure them by any such standard, then the plaintiff, after the performance of these services, could not be restored to the situation in which he was before, or be compensated by any recovery of legal damages. Under these circumstances, the rendition of the services, or the procuring them to be rendered, is a part performance of the verbal agreement, and the case is quite analogous to those in which outlays are made for improvements by a vendee or lessee under a parol contract. This principle is, at bottom, the same as that upon which the courts have proceeded, especially in a series of recent English decisions, in specifically enforcing certain agreements for continuous acts of la-

534

bor and services, and construction of works where the legal remedy of damages for their breach is impracticable."

In Sears v. Redick (C. C. A. 8) 211 F. 856, 860, the court said:

"The principle on which the exception to the statute of frauds which makes a written contract essential to a valid agreement to convey land rests, is that a court of equity will not permit the use of the statute to perpetrate a practical fraud, and the test of the exception is the answer to the question: Would the application of the statute to the parol contract inflict irreparable injury upon one who has so changed his situation in reliance upon it that he cannot be restored to his original position and cannot be adequately compensated in damages at law? If it would, the contract may be enforced in equity; if it would not, it may not be sustained."

The general rule obtains in Oklahoma. Eggstaff v. Phelps, 99 Okl. 54, 226 P. 82; Purcell v. Corder, 33 Okl. 68, 124 P. 457. See, also, Owens v. McNally, 113 Cal. 444, 45 P. 710, 712; McCullough v. McCullough (Wash.) 280 P. 70; Popejoy v. Boynton, 112 Or. 646, 229 P. 370, 371, 230 P. 1016; Whitney v. Hay, supra.

In the instant case, the services alleged to have been rendered, pursuant to the contract, consisted of the plaintiff living with Bridget Ann Barber as a son and devoting his time and attention to her wants and to the management of her business; the services involved companionship, care, attention and business management. The period during which such services were to be rendered was uncertain. With the exception of the item of business management, these services were personal in character and could not be readily measured by any pecuniary standard. McCullough v. McCullough, supra, at pages 72 and 73; Eggstaff v. Phelps, supra; Popejoy v. Boynton, supra.

It is our opinion such services were of such a peculiar character that it is impossible to establish their value by any pecuniary standard and that the parties to the contract did not intend to measure them by any such standard. It follows that the allegations of the complaint state a good cause of action for specific performance of the contract, with respect to the land.

The cause is reversed and remanded with instructions to overrule the motion to dismiss the cause of action set forth in the bill with respect to the land. The costs are adjudged against the defendants.